MICHAEL A. KANNAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kannas v. Commissioner
Docket No. 2834-78.
United States Tax Court
T.C. Memo 1980-127; 1980 Tax Ct. Memo LEXIS 455; 40 T.C.M. (CCH) 194; T.C.M. (RIA) 80127; April 21, 1980, Filed Michael A. Kannas, pro se. Alan J. Pinner, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in income taxes, and additions to tax, due from the petitioner as set forth below: Additions to Tax Year
Tax § 6651(a) [1]
1972
$ 893.00
0
1973
2,257.00
$459.00
1974
2,615.00
0
The issues for our decision are as follows: 1. Whether petitioner can deduct certain losses/expenses incurred in connection with real *457 property owned by petitioner in the years 1972 through 1974; 2. Whether the petitioner is entitled to the following: (a) business expenses of $800.00 claimed on petitioner's 1973 Federal income tax return; (b) contributions of $450.00 claimed on petitioner's 1974 Federal income tax return; and (c) a casualty loss not claimed on petitioner's 1974 Federal income tax return; 3. Whether petitioner is entitled to use income averaging for the taxable years 1973 and 1974; and 4. Whether petitioner is liable for an addition to tax under section 6651(a) for failure to timely file his 1973 Federal income tax return. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioner resided in California at the time the petition was filed in this case. Petitioner filed timely Federal income tax returns for the taxable years 1972 and 1974. He failed to file a timely Federal income tax return for the taxable year 1973. Petitioner's 1973 Federal income tax return was received June 12, 1975, by the Internal Revenue Service Center in Fresno, California. During each of the *458 years 1972, 1973 and 1974, petitioner owned a home located near Crestline, California, which is in the San Bernardino Mountains, approximately 18 miles northeast of San Bernardino. The Crestline area is a mountainous resort area surrounding a lake. Many people, including petitioner, own second homes on or near the lake. During these years petitioner's family made little or no use of the home. Although on occasion he rented this house to friends--his returns reflected gross rental income of $280, $375 and $280 for the years 1972 through 1974 respectively--petitioner made no effort to rent the house to the general public. Instead, petitioner believed that a governmental agency wanted the house available to harbor certain individuals in the event they returned to the United States. He kept the house available as a "safe house" for them. Petitioner had no rental contract with the governmental agency nor did he expect to receive compensation from the agency for the use of the mountain home, but he believed that the agency would have paid him rent for the use of his cabin had he so requested. Prior to the taxable year 1972, petitioner had worked as a consultant for the governmental *459 agency and was paid a fee and reimbursed for expenses. Petitioner's returns for the years 1972, 1973 and 1974 reflect the following expenses in connection with his Crestline home: 1972
Depreciation
$1,508.00
Plumbing and heating
140.00
Gardening
60.00
Interest
1,567.00
Taxes
753.00
Water and utilities
414.00
Water sewer bonds
170.00
Mountain patrol
60.00
Total
$4,672.00
1973
Depreciation
$1,508.00
Labor and carpentry
945.00
Gardening
100.00
Interest
1,500.00
Insurance
65.00
Painting
80.00
Water and utilities
410.00
Mountain patrol
70.00
Water sewer bonds
170.00
Taxes
576.00
Total
$5,424.00 *
1974
Depreciation
$1,508.00
Taxes
715.00
Interest
1,562.00
Painting and repairs
227.00
Plumbing and sewer
498.00
Insurance
65.00
Mountain patrol
80.00
Water sewer bonds
378.00
Water and utilities
400.00
TOTAL
$5,433.00 *
Of the expenses deducted by petitioner in each of the taxable years 1972, 1973 and 1974, as set forth above, the respondent has allowed *460 in each year the amounts deducted as interest and taxes. On his 1973 Federal income tax return, petitioner also claimed business expenses in the amount of $6,462.00 of which respondent disallowed $400.00 for telephone, $200.00 for books and journals and $200.00 for professional dues and subscriptions. On Schedule A of his 1974 Federal income tax return, petitioner claimed charitable contributions in the amount of $750.00 of which respondent has disallowed $450.00 In determining his income tax liabilities for the taxable years 1973 and 1974, petitioner utilized income averaging. Respondent, in his notice of deficiency, disallowed petitioner's use of the income averaging method based upon petitioner's failure to furnish necessary information. OPINION The first issue presented for our decision involves the deductibility of losses claimed by petitioner in connection with a house he maintained in the San Bernardino Mountains. On his 1972 through 1974 income tax returns petitioner deducted expenses and depreciation which exceeded the amount of rent received during those years. Respondent disallowed the bulk of this deduction, only allowing as itemized deductions the amount *461 of interest and taxes paid on the property. Respondent's position is that petitioner's primary purpose in owning the house was not to make a profit. Thus, respondent argues, without the requisite profit motive, the leasing arrangement cannot be considered a trade or business for purposes of deducting any expenses or losses incurred. Petitioner argues that he did not maintain the house for personal reasons but rather as a "safe house" for radicals and revolutionaries. He contends that he did this with the knowledge of and cooperation from operatives working for an agency of the United States Government. The operating expenses and depreciation relating to the house are deductible business expenses if the property is either used in a trade or business or held for the production of income, sections 162(a), 167(a)(1) and (2), and 212.The losses incurred would be deductible if incurred either in a trade or business or in a transaction entered into for profit. Sections 165(a) and 165(c)(1) and (2). Jasionowski v. Commissioner,66 T.C. 312 (1976). Whether we are talking about losses or deductions, petitioner must show that the activity in question was undertaken *462 with the primary intention and motivation of making a profit to qualify under these provisions. Jasionowski v. Commissioner,supra at 319. The record does not clearly indicate what petitioner believes to be the scope of his activities. But the result is the same whether we take the narrow approach and view the house as the focal point of the activity or take a broader approach and view the rental property as one aspect of petitioner's trade or business of serving as an agent for an instrumentality of the United States. Petitioner did not accept money from the United States for maintaining this house as a "safe house" for radicals, and there is no evidence that petitioner was paid for any services that he purportedly rendered to the United States. Thus, it is clear that petitioner had no bona fide expectation of making a profit in connection with this activity. Treas. Reg. § 1.183-2(a); Jasionowski v. Commissioner,supra at 321. Despite the fact that petitioner's reasons for acquiring and maintaining the property may have been commendable, it follows that the only expenses arising in connection with the house *463 that can be deducted re those permitted by section 183 for activities not engaged in for profit. In this case only the tax and interest payments qualify and these deductions were allowed by respondent in the notice of deficiency. Respondent's determination on this issue is sustained. [2]
In reaching this conclusion we are not unmindful of petitioner's testimony tht one of his motives in acquiring and maintaining his Crestline cabin was making a profit for his son and his wife. Although, as this statement suggests, petitioner may have hoped to realize a capital gain greater than the losses *464 sustained, we have consistently held that the mere anticipation of selling this type of property at a profit is not in itself sufficient to establish that the property was held primarily for a profit. Jasionowski v. Commissioner,supra.
The second issue with certain other deductions that respondent did not allow. With regard to petitioner's 1973 tax return, respondent disallowed $800.00 of the claimed $6,462.00 in business expenses. The $800.00 consists of $400.00 for telephone expenses, $200.00 for books and journals and $200.00 for professional dues and subscriptions. At trial petitioner could offer no better evidence than his bald assertion that he is a professional and reads books. (Respondent allowed a $200.00 deduction for books and journals.) No documentation was offered even though the expenses claimed are the type that are susceptible of proof by documentation. The other disallowed item was $450.00 out of the $800.00 charitable contribution that petitioner claimed on his 1974 income tax return. Petitioner testified that he gave that amount to the African Methodist Episcopalian Church in Pomara, California, because he was a friend of the pastor *465 and the church was in trouble. Again, petitioner offered no documentary evidence to corroborate his testimony. Once again this is an item that is particularly susceptible of being documented, either in the form of a cancelled check or a letter from the church. Petitioner has the burden of proving entitlement to these deductions. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Based on the record, petitioner has not met this burden on these two items. We therefore sustain respondent's determination. At trial petitioner sought to establish qualification for a casualty loss deduction of $1,500 to $2,000 which he failed to claim on his 1974 return and which allegedly resulted from a fire. To prove entitlement to a casualty loss deduction, petitioner must show, among other things, the nature of the casualty, when it occurred, sufficient ownership interest for the deduction, the basis of the property and the value of the property before and after. Treas. Reg.§ 1.165-7(a)(2). Petitioner's evidence fails in all these respects. Indeed, his testimony was so vague that we are not sure whether *466 the fire occurred in his house or in the woods near his house. His claim is denied. The third issue focuses on petitioner's use of income averaging for the years 1973 and 1974. Sections 1301 through 1305 provide that an eligible individual may chose to compute tax on his averagable income. Respondent disallowed petitioner's use of income averaging because petitioner failed to produce the documentation necessary to prove his eligibility for income averaging. Petitioner adduced no probative evidence on this issue at trial and we therefore sustain respondent's determination. Finally, we consider whether petitioner is liable for a section 6651(a) penalty for failing to file a timely return for the year 1973. Petitioner's return was received by the Internal Revenue Service on June 12, 1975. His excuse, simply stated, is that the press of business led to the delay in filing the return. Such an explanation does not establish that the petitioner exercised ordinary business care and prudence in attending to his income tax obligations. Treas. Reg. § 301.6651-1(c)(1). See Dustin v. Commissioner,467 F. 2d 47 (9th Cir. 1972). Accordingly, *467 respondent's determination is sustained. To reflect an agreement by the parties on other issues, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.↩
*. The stipulation of facts erroneously lists this total as $5,109.00.↩
*. The stipulation of facts erroneously lists this total as $5,143.00.↩
2. One additional argument suggested by these facts is that payment of these expenses constitutes a gift to the United States and thus qualifies as a section 170 charitable contribution. The only evidence adduced by petitioner to substantiate his claim that he cooperated with a government agency in maintaining a "safe house" was his testimony to that effect which was disjointed and confusing. Standing alone, petitioner's testimony in this case is not sufficient to sustain petitioner's burden of proof on this issue. We conclude that petitioner is not entitled to a charitable deduction.↩